## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In Re: ) | Chapter 7 |
| ) | |
| Brett Immel and Jodi Immel, ) | Case No. 09 B 36874 |
| ) | |
| Debtors. ) | Hon. Susan Pierson Sonderby |

### MEMORANDUM OPINION

This matter comes to be heard on the Debtors' Motion Pursuant to 11 U.S.C. § 506(a) and Bankruptcy Rule 3012 to Determine the Value of Security and Avoid Lien of Fifth Third Bank on Debtors' Property. For the reasons that follow, the motion will be denied.

**Jurisdiction and Venue**

This court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §157(b)(2)(K). Venue is properly placed in this court pursuant to 28 U.S.C. § 1409(a).

**Background**

The facts are undisputed for purposes of this motion. On October 2, 2009, the Debtors, Brett and Jodi Immel, filed a voluntary joint petition under chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Code"). The Debtors own residential real estate in Chicago valued at $400,000. The home is encumbered by three mortgages: a first lien held by One West Mortgage in the amount of $348,489, a second lien held by National City in the amount of $164,819, and a third lien held by Fifth Third Bank in the amount of $226,000.

Unless the Code permits otherwise, liens "stick with the asset" after bankruptcy. *See* In re CMC Heartland Partners, 966 F.2d 1143, 1147 (7th Cir. 1992). By this motion, the Debtors seek to "strip off" Fifth Third Bank's mortgage lien from their home because the home's value is fully encumbered by the prior mortgage liens of One West Mortgage and National City.[1]

The Debtors' Summary of Schedules reflect total assets of $1,592,702 and total liabilities of $6,215,120. (Bankruptcy Case Docket no. 1).[2] The petition includes the Debtors' estimate that "after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors." Id. The Debtors thus filed what they then estimated would be a no-asset chapter 7 case.

Within days of the filing of the petition, the Clerk of the Court, in accordance with Fed. R. Bankr. P. 2002(a)(1), sent to the Debtors' scheduled creditors, including Fifth Third Bank, the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines (the "341 Meeting Notice"). (Docket no. 11). The 341 Meeting Notice includes information concerning the bankruptcy filing based, in part, on the Debtors' Schedules, which as noted, indicate that there will be no nonexempt assets to distribute. In the explanatory notes on the reverse side of the 341 Meeting Notice, the creditors were told that,

> There does not appear to be any property available to the trustee to pay creditors. *You therefore should not file a proof of claim at this time.* If it later appears that assets are available to pay creditors, you will be sent another notice telling you that you may file a proof of claim, and telling you the deadline for filing your proof of

---

[1] Fifth Third Bank did not raise the issue of whether this type of relief has to be accomplished via an adversary proceeding. *See* Fed. R. Bank. P. 7001(2)(providing that an adversary proceeding includes "a proceeding to determine the validity, priority, or extent of a lien").

[2] The court takes judicial notice of the Debtors' petition and other documents filed in this bankruptcy case. *See* In re Woodmar Realty Co., 294 F.2d 785, 788 (7th Cir. 1961).

2

claim.[3]

(Id.) (emphasis in original).

The Debtors' estimation that this case would be a no-asset chapter 7 case proved correct. On November 16, 2009, the chapter 7 trustee appointed in this case electronically filed a Report of No Distribution. (Docket no. 30). She certified in the Report that she "made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate." Id. After that inquiry she concluded that "there is no property available for distribution from the estate over and above that exempted by law" and certified that the Debtors' estate was fully administered. Id. Accordingly, the estate assets were abandoned and the trustee requested that she be discharged from her duties. Id.

The Debtors received a discharge from their debts on January 13, 2010, with the entry of a discharge order. (Docket no. 39). Because the docket indicated the filing of a Report of No Distribution and the entry of a discharge order, this no-asset chapter 7 case would have been closed shortly after the entry of the discharge order, ending this court's limited involvement in the case. See 11 U.S.C. § 350(a); Fed. R. Bankr. P. 5009.

A day after entry of the discharge order, however, the Debtors filed this Motion Pursuant to 11 U.S.C. § 506(a) and Bankruptcy Rule 3012 to Determine the Value of Security and Avoid Lien

---

[3] Rule 2002(e) of the Federal Rules of Bankruptcy Procedure provides that "[i]n a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims." Fed. R. Bankr. P. 2002(e). Rule 3002(c)(5) in turn provides that, "[i]f notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed." Fed. R. Bankr. P. 3002(c)(5).

of Fifth Third Bank. The Debtors assert in the motion that "the secured claim of Fifth Third Bank exceeds the value of the subject property, leaving nothing for Fifth Third Bank's claim to attach to." (Debtors' Motion, ¶ 10.). The Debtors ask the court therefore, to "hold that the interest of Fifth Third Bank . . . is valued at zero and that its lien is void." (Id., at 4). The Debtors further request that the court direct Fifth Third Bank to "cancel and release" its mortgage within thirty days. Id.

**Discussion**

The Debtors do not cite to a Code section they are relying on to void Fifth Third Bank's lien and compel the release of the mortgage. It is clear, however, from their argument that they are relying on § 506(d) of the Code. First, the Debtors ask the court to determine, pursuant to § 506(a), that the value of Fifth Third Bank's secured claim is zero given that the home's value is fully encumbered by prior liens. Section 506(d) arguably voids the unsecured portion of a secured creditor's claim. And, according to the Debtors, since Fifth Third Bank's claim is wholly unsecured, the entire lien should be declared void. That argument, however, is based on a faulty reading of § 506(d).

The court's analysis starts with § 506(a), which provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a). Section 506(a) thus operates to divide "loans into secured and unsecured portions; the unsecured portion is the amount by which the debt exceeds the current value of the collateral." In re Wright, 492 F.3d 829, 830 (7th Cir. 2007); see also U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 239, 109 S. Ct. 1026, 1029, 103 L. Ed. 2d 290 (1989)(stating that §

4

506(a) "provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured").

Section 506(d) states, "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ." 11 U.S.C. § 506(d). The language of § 506(d) has been read in conjunction with § 506(a) by chapter 7 debtors to mean that "if a claim secured by a lien on property exceeded the value of the property, the unsecured portion of the claim was not an 'allowed secured claim' and therefore the corresponding lien could be avoided . . . ." In re Pomilio, 425 B.R. 11, 14 (Bankr. E.D.N.Y. 2010). Such a reading, however, has been rejected by the United States Supreme Court, albeit in a somewhat different context than this case. See Id. (citing Dewsnup v. Timm, 502 U.S. 410, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992)).

Dewsnup involved a chapter 7 debtors' attempt to use § 506(d) to "strip down" a partially unsecured mortgage lien to the value of the subject property. The Court held that "§ 506(d) does not allow [chapter 7 debtors] to 'strip down' respondents' lien." Dewsnup, 502 U.S. at 417, 112 S. Ct. at 778. Here, the Debtors request is not just to strip down part of the lien, but to strip off the entire mortgage lien from their home, because the claim amount it secures entirely exceeds the home's unencumbered value. As will be discussed, however, Dewsnup's rationale concerning chapter 7 debtors' attempts to strip down partially unsecured mortgages applies equally to chapter 7 debtors' attempts to strip off the entire mortgage lien. The two circuit courts that have considered this issue have so held. See In re Talbert, 344 F.3d 555, 560 (6th Cir. 2003)("The Supreme Court's reasoning for not permitting 'strip downs' in the Chapter 7 context applies with equal validity to a debtor's attempt to effectuate a Chapter 7 strip off."); Ryan v. Homecomings Fin. Network, 253 F.3d 778, 782 (4th Cir. 2001) ("Following the Supreme Court's teachings in *Dewsnup*, as we must, we discern

5

no principled distinction to be made between the case *sub judice* and that decided in *Dewsnup*. The Court's reasoning in *Dewsnup* is equally relevant and convincing in a case like ours where a debtor attempts to strip off, rather than merely strip down, an approved but unsecured lien.").

In Dewsnup, the Supreme Court was confronted with the issue of whether a chapter 7 debtor may use § 506(d) to "'strip down' a creditor's lien on real property to the value of the collateral, as judicially determined, when that value is less than the amount of the claim secured by the lien[.]" 502 U.S. at 411-12. According to the debtors in the Dewsnup case, a reduction of the mortgage lien to the value of their house "was compelled by the interrelationship of the security-reducing provision of § 506(a) and the lien-voiding provision of § 506(d)." Id. at 413. The Court disagreed, holding that § 506(d) is not a grant of authority to allow a chapter 7 debtor to strip down the lien to the value of the collateral. Id. at 417.

In reaching its decision, the Court observed that "§ 506 of the Bankruptcy Code and its relationship to other provisions of the Code do embrace some ambiguities." Id. at 416. The Court, impressed with the myriad of hypothetical applications "that come to mind" as well as those advanced by the parties, focused its interpretation of § 506 to the facts of the case before it. Id. at 416-17. One of the important facts in Dewsnup was that there was no question that the "claim at issue . . . has been 'allowed' pursuant to § 502 of the Code." Id. at 415.[4]

The Court considered the various arguments raised by the debtors, the mortgagee creditors, and their respective *amici*, and found that the position of the creditors, "espoused also by the United States, although not without its difficulty, generally is the better of the several approaches." Id. at

---

[4] Section 502 provides, in part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

417. The Court saw merit in the debtors' reading of § 506(d), and might have agreed with it "[w]ere [it] writing on a clean slate." Id. The Court was swayed, however, to the creditors' position given the longstanding "pre-Code rule that liens pass through bankruptcy unaffected." Id. It is implausible that Congress would have departed from that pre-Code rule and give chapter 7 debtors a new ability to void liens based solely on collateral value without mentioning that remedy "in the Code itself or in the annals of Congress." Id. at 420. In this regard, the Court noted that "[a]part from reorganization proceedings, . . . no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt." Id. at 418-19. The Court also observed that outside of bankruptcy, the mortgagee bargained for a lien that remains with the property until foreclosure and the mortgagee gets the benefit of any increase in the value of the collateral until foreclosure. Id. at 417. To freeze the lien at the judicially-determined value and strip the unsecured portion from the house is in contravention of those principals. Id.

The Court therefore adopted the position that "the words 'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision. Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and second, secured." Id. at 415; see Bank One, Chicago, N.A. v. Flowers, 183 B.R. 509, 513 (N.D. Ill. 1995)(the court described Dewsnup's holding as "the words 'allowed secured claim' in § 506(d) mean[] an allowed claim (in the full amount due, without bifurcation) secured by the lien. Thus, the Court's decision effectively prohibited 'strip downs' in Chapter 7 proceedings").

Therefore, "[b]ecause there is no question that the claim . . . has been 'allowed' pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come

7

within the scope of § 506(d), which voids only liens corresponding to claims that have *not* been allowed and secured." Dewsnup, 502 U.S. at 415. (emphasis in original). In other words, "as long as the claim is 'allowed' under § 502 and the claim is 'secured' by a valid lien . . . [§ 506(d)] does not apply." In re Cater, 240 B.R. 420, 423 (M.D. Ala. 1999); *see also* In re Jarvis, 390 B.R. 600, 603 (Bankr. C.D. Ill. 2008)(explaining that the Supreme Court has held that "the provisions of § 506(d) do not allow a Chapter 7 debtor to strip a lien on property based on the undersecured status of the creditor holding the lien").

As noted, in Dewsnup, the fact that the creditor had an "allowed" secured claim was not questioned. *See* Dewsnup, 502 U.S. at 415. Pursuant to § 502, a claim in a chapter 7 case is "allowed" when a proof of claim is filed under § 501, and no party in interest objects. 11 U.S.C. § 502(a). If an objection is filed, the court must determine the amount of the claim and allow it in the determined amount. 11 U.S.C. § 502(b). The claims allowance process thus starts with the filing of a proof of claim under § 501. *See* In re Fareed, 262 B.R. 761, 764-65 (Bankr. N.D. Ill. 2001).

As a rule, however, creditors, including secured creditors, do not file proofs of claim in no-asset chapter 7 cases. Indeed, they are discouraged from doing so in the 341 Meeting Notice because there are no nonexempt assets in the estate to distribute. Moreover, even if creditors ignore the discouragement and file proofs of claims, the chapter 7 trustee in charge of the no-asset case will likely not object to the claim. The chapter 7 trustee's duty to examine and object to any improper claims only arises "if a purpose would be served." 11 U.S.C. § 704(a)(5). No purpose would be served for the chapter 7 trustee to object if there are no assets to distribute to the estate's creditors. "Indeed, such objections are improper and can result in delay and wasteful expenditures of estate resources." Collier on Bankruptcy ¶ 704.09[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Some courts have held that the claims allowance process is not implicated in no-asset chapter 7 cases and "*Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d)." In re Laskin, 222 B.R. 872, 876 (9th Cir. BAP 1998). Moreover, the Code provides that a claim which is not an allowed secured claim merely because any entity did not file proof of such claim is excepted from being void under § 506(d). 11 U.S.C. § 506(d)(2). In this matter, therefore, the fact that Fifth Third Bank did not file a proof of claim is not a reason to void its lien pursuant to § 506(d). In addition, no one has filed a claim on behalf of Fifth Third Bank to set up a challenge to its allowance, which might implicate a § 506(d) avoidance. *See* In re Penrod, 50 F.3d 459, 462 (7th Cir. 1995)(the Court observed, citing to § 506(d), that "[i]f the secured creditor's claim is challenged in the bankruptcy proceeding and the court denies the claim, the creditor will lose the lien by operation of the doctrine of collateral estoppel."); *see also* In re Janssen, 311 B.R. 518, 520-21 (Bankr. E.D. Mo. 2004). Indeed, the only reason advanced that Fifth Third Bank's mortgage lien is void under § 506(d) is not that Fifth Third Bank's secured claim is not or should not be allowed, but solely because at the time the motion is brought, it is unsecured for purposes of § 506(a). This is an argument which Dewsnup rejects.

The Supreme Court, however, cautioned that its holding in Dewsnup was limited to the facts before it, which involved a chapter 7 debtors' request to void the unsecured portion of the "allowed secured claim" held by the mortgagee. In contrast to the secured claim in Dewsnup, however, Fifth Third Bank's secured claim is wholly, not just partially, unsecured. The Debtors seek not just to strip down the mortgage lien to the value of the collateral, but to strip it off in its entirety.

Some courts have distinguished Dewsnup on that basis and allowed a strip-off of wholly unsecured claims pursuant to § 506(d) at the request of debtors in chapter 7 cases. *See* In re Lavelle,

9

No. 09-72389-478, 2009 WL 4043089 (Bankr. E.D.N.Y. Nov. 19, 2009). In Lavelle, which is the only case the Debtors here rely on, the court reasoned that in the case of a wholly unsecured lien,

> [T]here is no equity whatsoever for the junior lien to attach for purposes of § 506(a) because a creditor's claim is secured "only to the extent of the value of such creditor's interest in such property." With respect to a wholly unsecured lien, the creditor de facto only has an unsecured claim under § 506(a). Accordingly, the wholly unsecured claims cannot qualify as "allowed secured claims" under § 506(d), and must be voided.

Lavelle, 2009 WL 4043089, at *5 (*citing* In re Zempel, 244 B.R. 625, 629-30 (Bankr. W.D. Ky. 1999)). This court finds the reasoning of Lavelle, the case upon which the Debtors here solely rely, understandable, but not persuasive.[5] The quoted language in Lavelle seems to reveal that the court referenced the language of § 506(a) to determine if the lien is void under the language of § 506(d). Such referencing of those two subsections of § 506 is improper in a chapter 7 case according to Dewsnup. Again, in a chapter 7 case § 506(d) concerns claim allowance under § 502, not claim valuation under § 506(a), and "in Dewsnup . . . the Supreme Court definitively held that claim allowance under 502 is distinct from collateral valuation under 506(a)." Fareed, 262 B.R. at 765.

This court is convinced that the rationale of Dewsnup applies to strip-off requests by chapter 7 debtors with "equal force and logic." Talbert, 344 F.3d at 556. Indeed, "whether the lien is wholly unsecured or merely undersecured, the reasons articulated by the Supreme Court for its holding in Dewsnup . . . - that liens pass through bankruptcy unaffected, the mortgagee and mortgagor bargained for a consensual lien which would stay with real property until foreclosure, and that any increase in value of the real property should accrue to the benefit of the creditor, not the debtor or

---

[5] It has been observed that the Zempel case upon which Lavelle relies and other similarly holding cases were abrogated by subsequent appellate court decisions. In re Arrieta, No. 09 B 12052, 2009 WL 1789576, at * 1 n. 1 (Bankr. N.D. Ill. June 22, 2009).

10

other unsecured creditors - are equally pertinent." Laskin, 222 B.R. at 876.

In summary, as noted, the Court held that "[b]ecause there is no question that the claim . . . has been 'allowed' pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have *not* been allowed and secured." Dewsnup, 502 U.S. at 415 (emphasis in original). Here, there is no question that Fifth Third Bank's claim is allowed and secured or "backed up" by an executed and recorded mortgage. *See* Cater, 240 B.R. at 422. The collateral that the mortgage lien clings to may be worth nothing, but there is no question that the underlying claim is an allowed secured claim for purposes of § 506(d). Id.

**Conclusion**

Debtors ask in their motion that the court determine the value of Fifth Third Bank's lien interest with a view that once it is determined to have zero value, the lien will be void under § 506(d) and Fifth Third Bank can thus be compelled to execute a release of its mortgage. For the reasons set forth herein, the Debtors' ultimate goal to void the entire mortgage lien under § 506(d) based on the determination of value under § 506(a) is unavailable to them, so the motion will be denied.

Dated:  JUN 3 0 2010

ENTER:

_____
Hon. Susan Pierson Sonderby
United States Bankruptcy Judge